IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| BRUCE POLLACK, | : | No. 1:11-cv-01969 | |
|     Plaintiff | : | | |
| | : | | |
| v. | : | | |
| | : | (Judge Kane) | |
| EMS FINANCIAL SERVICES, LLC, | : | | |
|     Defendant | : | | |

**MEMORANDUM**

Before the Court is Plaintiff Bruce Pollack's motion to change venue of November 17, 2014.  (Doc. No. 38.)  For the reasons that follow, the Court will deny the motion.

**I.      BACKGROUND**

Plaintiff initiated this diversity action on October 21, 2011, bringing claims for breach of contract and unjust enrichment.  (Doc. No. 1 ¶¶ 17-40.)  This case has progressed slowly, due in large part to Defendant EMS Financial Services, LLC's bankruptcy.  (See Doc. No. 13.)  Defendant filed a dismiss the complaint pursuant to either Federal Rule of Civil Procedure 41(b) for failure to prosecute or Federal Rule of Civil Procedure 12(b)(5) for failure to make service of process on September 23, 2014.  (Doc. No. 32-1 ¶ 16.)  Plaintiff filed his motion to transfer venue on November 17, 2014.  (Doc. No. 38.)  In its order denying Defendant's motion for default on February 3, 2015, (Doc. No. 42), the Court ordered Defendant to file an answer, which Defendant did on February 24, 2014 (Doc. No. 44).  On March 18, 2015, the Court ordered supplemental briefing on the issue of venue.  (Doc. No. 46.)  The order directed parties to brief the law of venue and to supply the Court with factual representations relevant to venue.  (Doc. No. 46).  The parties submitted their supplemental filings on March 27, 2015 (Doc. Nos. 47, 48).

## II.     LEGAL STANDARD

A district court may transfer a civil action to any district where the action could have

been filed under 28 U.S.C. § 1391, "[f]or the convenience of the parties and witnesses, in the

interest of justice."  28 U.S.C. § 1404(a).  Under 28 U.S.C. § 1391, civil cases may be brought

only in judicial districts where: (1) any defendant resides, if that judicial district is in a state

where all defendants reside; (2) a substantial part of the events or omissions upon which the

claim is based occurred; (3) a substantial part of property subject to a lawsuit can be found; or

(4) in any district where a defendant can be brought under the personal jurisdiction of the court,

but only if no district would otherwise provide a proper venue.  28 U.S.C. § 1391(b).  A district

court may not transfer a civil action to a district court that cannot exercise personal jurisdiction

over an action's defendants.[1]  See Sunbelt Corp. v. Noble, Denton & Associates, Inc., 5 F.3d 28,

31 (3d Cir. 1993).  The question of a transferee court's personal jurisdiction depends upon the

extent to which a state court sitting in that district could exercise personal jurisdiction under that

state's long-arm statute.  See id. at 31-32.

Once a transferee court's suitability under Section 1391 has been determined, transfers

under Section 1404(a) are "discretionary determinations made for the convenience of the parties

and presuppose that the court has jurisdiction and that the case has been brought in [a] correct

forum."  Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007).  The United States Court of Appeals

for the Third Circuit, noting that district courts should not "limit[] their consideration to the three

---

[1] In actions with multiple defendants, courts face a more complicated inquiry, and district courts may in some cases sever and transfer individual defendants.  See Sunbelt Corp. v. Noble, Denton & Associates, Inc., 5 F.3d 28, 33-34 (3d Cir. 1993).  This case does not present that complication.

enumerated factors in § 1404(a)," has outlined private and public factors for courts to consider

when determining whether to transfer an action.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879

(3d Cir. 1995).  The relevant private factors include: (1) each party's forum preference; (2)

where the claims arose; (3) the convenience of the parties as indicated by their relative physical

and financial conditions; (4) the convenience of the witnesses; and (5) the location of books and

records.  Id.  Relevant public factors include: (1) the enforceability of the judgment; (2) practical

considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative

administrative difficulty in the two fora resulting from court congestion; (4) the local interest in

deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of

the trial judge with the applicable state law in diversity cases.  Id.

## III.    DISCUSSION

Despite the supplemental briefing, the facts relevant to venue in this case remain clouded.

The question of venue is further complicated by the peculiar stance of this motion: it is rare for a

plaintiff to file a motion to change venue, especially years after the initiation of the action.  In his

supplemental filing on venue, Plaintiff has attached a copy of a relevant contract showing that

the document was faxed to a number in Rhode Island.  (Doc. No. 48-1.)  In addition, Plaintiff

provided attachments that establish that he owned a home in Rhode Island during contract

negotiations, and that he filed his income taxes in Rhode Island.  (Doc. Nos. 48-2, 48-3, 48-4.)

Plaintiff avers that the "contract was executed by Plaintiff at his home in Rhode Island,"

although the Court observes that the contract itself lists an address in Massachusetts for Plaintiff.

(Doc. No. 48 at 5.)  Plaintiff explains that he "originally chose the Middle District as 138 Twin

Lakes Drive, Gettysburg, Pennsylvania was the only listed address for Defendant pursuant to the

contract between the parties," however in a motion to set aside default in this case, Defendant

represented to the Court that James Nicholson, its former agent upon whom Plaintiff had

attempted service, ended his affiliation with Defendant on September 19, 2011.  (Id. ¶¶ 7, 9.)

There is no other indication that Defendant maintains a place of business in this district.

Defendant devotes its supplemental filing to arguing that this action could not have been

brought in the District of Rhode Island, so transfer to that district would contravene Section

1404(a).  (Doc. No. 47 at 2-4.)  Defendant also argues that Plaintiff bears the burden on a motion

to transfer, and that Plaintiff has failed to carry that burden in this case.  (Doc. No. 47 at 4-6.)

However, Defendant's supplemental filing makes no additional factual representations that

address the propriety or appropriateness of venue in the Middle District of Pennsylvania or in the

District of Rhode Island.

On March 18, the Court ordered the parties to "supplement their existing filings with

statements of fact and relevant attachments" in addition to addressing the law.  (Doc. No. 46 at

2) (emphasis added).  "The parties should include information regarding their own residences

and places of business, the location of contract signing and negotiation, any forum selection

clauses, and any other information that may be useful to the Court."  (Id. at 2-3.)  Defendant's

submission is devoid of any factual representations, and it even quotes a part of Plaintiff's

complaint that is now believed to be inaccurate and that Defendant itself has denied in its

answer.  (Doc. No. 47 at 3) ("Plaintiff's complaint identifies EMS as a Florida Limited Liability

Company with a principal place of business in Gettysburg, Pennsylvania."); (Doc. No. 44 ¶ 2)

("Denied as stated.  It is admitted only that [Defendant] was a Florida Limited Liability

Company which at one time had an office in Gettysburg, Pennsylvania.").

Even still, the Court must deny Plaintiff's motion, because the Court cannot find that the District of Rhode Island would have had personal jurisdiction over Defendant at the time Plaintiff filed this action, as it must do in order to transfer this action to that district.  28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought . . .").  Rhode Island's long-arm statute, which dictates the extent of the United States District Court for the District of Rhode Island's personal jurisdiction, allows for personal jurisdiction up to the maximum amount permitted by the Due Process Clause to the United States Constitution.  Astro-Med, Inc., v. Nihon Kohden Am., Inc., 591 F.3d 1, 8-9 (1st Cir. 2009) (citing R.I. Gen. Laws § 9-5-33(a)).  As the First Circuit has explained when applying the Rhode Island long-arm statute,

> [T]he due process inquiry controls. Due process "requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Id. at 9 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)); Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010).  Exercises of personal jurisdiction are based either on "continuous corporate operations with in a state," known as general jurisdiction, or where a party's "in-state activities . . . gave rise to the liabilities sued on," known as specific jurisdiction.  Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014) (quotations omitted).  Here, there is no indication that Defendant was "at home" in Rhode Island at the time Plaintiff filed suit, so general jurisdiction would not lie.  Id. at 761 (holding that general jurisdiction is appropriate only where a corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home" there) (quotations omitted).

In determining whether an entity's contacts with a forum are sufficient to assert specific personal jurisdiction, it is by now a firmly entrenched principle that "[t]he mere existence of a contract is insufficient to establish minimum contacts" for a Due Process analysis.  Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).  By its stated terms, the contract as signed bears no relationship to Rhode Island, other than Plaintiff's residence there and the faxing of the contract into the state.  The contract itself indicates that Plaintiff lived in Massachusetts, provides a Pennsylvania address for Defendant, stipulates that Maryland law will govern, and calls for bank clearance in Bethesda, Maryland.  (Doc. No. 48-1.)  Even the contract does not establish a bona fide contact with Rhode Island, and the record is devoid of any other evidence of Defendant's contacts with the state.  Consequently, it cannot be said that Defendant's "conduct and connection with [Rhode Island] are such that [it] should reasonably anticipate being haled into court there."  Rudzewicz, 417 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

IV.     **CONCLUSION**

While Rhode Island may be a more convenient forum for Plaintiff, for the foregoing reasons, the Court cannot transfer this action to that district at this time.  An order consistent with this memorandum follows.